U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED

JUL 2 4 2007

ROBERT H. SHEMWELL, CLERK
BY _____
                DEPUTY

**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF LOUISIANA**

**ALEXANDRIA DIVISION**

PHILLIP ALBERT JOHNSON             CIVIL ACTION NO. 07-0920

VS.                                SECTION P

VENETIA MICHAELS, WARDEN           JUDGE DRELL

                                   MAGISTRATE JUDGE KIRK

## REPORT AND RECOMMENDATION

Before the court is a *pro se* petition for writ of *habeas corpus* (28 U.S.C. §2254) received and filed in this court on May 30, 2007. Petitioner is an inmate in the custody of Louisiana's Department of Public Safety and Corrections. He is incarcerated at the Forcht-Wade Correctional Center, Keithville, Louisiana where he is serving the 15-year sentence imposed following his 1999 forcible rape conviction in the Ninth Judicial District Court, Rapides Parish.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the court. For the following reasons it is recommended that the petition be **DENIED** and **DISMISSED WITH PREJUDICE** as time-barred by the provisions of 28 U.S.C. §2244(d).

### Statement of the Case

On December 15, 1998, petitioner was indicted by the Rapides

Parish Grand Jury on a charge of forcible rape. [doc. 1-8, p. 28]
On August 24, 1999, petitioner was found guilty as charged. [doc.
1-1, paragraph 3(b)] On September 24, 1999 petitioner was
sentenced to serve 15-years at hard labor [*id.*, paragraph 3(c)]

Petitioner appealed his conviction to the Third Circuit
Court of Appeals. His retained trial and appellate counsel argued
a single assignment of error – sufficiency of the evidence. [doc.
1-3, pp. 1-14] On June 7, 2000 the Third Circuit affirmed his
conviction in an unpublished opinion. State of Louisiana v.
Phillip A. Johnson, 2000-00042 (La. App. 3 Cir. 6/7/2000), 771
So.2d 325 (Table). See Slip Opinion at doc. 1-3, pp. 16-22. On
June 14, 2000, petitioner's retained trial and appellate counsel
sent him a copy of the Third Circuit's opinion, and, in the
accompanying cover letter advised petitioner to contact him as
soon as possible. [doc. 1-3, p. 15]

On May 28, 2001[1] petitioner filed a *pro se* writ application
in the Louisiana Supreme Court. [doc. 1-3, pp. 23-38] In his
"Statement of the Case" petitioner alleged, "On January 18, 2000,

---

[1] See doc. 1-3, p. 38. Petitioner signed his writ application on May 28,
2001. In the absence of any contradictory information, petitioner will be
afforded the benefits of the "mailbox" rule which states that prisoner
litigants proceeding *pro se* are deemed to have filed their pleadings on the
date that they were handed to prison authorities for mailing. Houston v. Lack,
487 U.S. 266, 276, 108 S.Ct. 2379, 2385, 101 L.Ed.2d 245 (1988). In State ex
rel. Egana v. State, 00-2351 (La.9/22/00), 771 So.2d 638, the Louisiana
Supreme Court approved the use of the "mailbox rule." The date that petitioner
verified and signed his pleadings is clearly the earliest date that the
pleadings could be said to have been filed.

the record of appeal was filed with the Louisiana Court of Appeal
for the Third Circuit, and lodged under docket number 00 00042-
KA. On June 7, 2000, that Court ... affirmed relator's conviction
and sentence. Relator now seeks Writs in this Honorable Supreme
Court." [doc. 1-3, p. 25] Petitioner argued that the evidence was
insufficient, and, various instances of ineffective assistance of
trial and appellate counsel. [doc. 1-3, pp. 27-38]

On May 31, 2002, the Supreme Court denied writs without
comment. State of Louisiana v. Phillip Johnson, 2001-1897 (La.
5/31/2002), 816 So.2d 866. [See also doc. 1-3, p. 40]

On May 27, 2004 petitioner filed his first and only
Application for Post-Conviction Relief in the Ninth Judicial
District Court. [doc. 1-4, pp. 1-30][2] Petitioner argued six
claims for relief: (1) Petitioner was denied his right to a fair
and impartial jury; (2) Judicial Misconduct; (3) Prosecutorial
Misconduct; (4) Unconstitutional application of Louisiana's Sex
Laws; (5) Ineffective assistance of counsel (failed to prepare a
defense, failed to object to prejudicial testimony, failed to
properly handle evidence that was provided by petitioner's
parents, and failed to prepare a defense); and, (6) Denial of a

---

[2] Petitioner's accompanying cover letter was dated May 27, 2004 [doc. 1-
4, p. 1]; the verification accompanying the application was dated May 27, 2004
[id., p. 8] See footnote 1, *supra*. In the absence of any contrary evidence,
and in accordance with the mailbox rule, it will be assumed that petitioner
filed his pleading on May 27, 2004.

"True and Correct Copy" of the trial transcript for appeal.[3] On June 4, 2004 petitioner's application for post-conviction relief was denied by the trial court as time-barred by the provisions of La. C.Cr.P. art. 930.8. [doc. 1-9, p. 30]

Petitioner timely filed a Notice of Intent to seek writs of review and was given a return date of July 15, 2004. [doc. 1-10, pp. 1-2] On June 24, 2004 petitioner filed his writ application in the Third Circuit [doc. 1-10, pp. 8-21] On August 6, 2004, the Third Circuit granted writs finding that the trial court erred when it found petitioner's application for post-conviction relief was time-barred. State of Louisiana v. Phillip A. Johnson, KH 04-00883 (La. App. 3 Cir. 8/6/2004) (unpublished). [doc. 1-10, p. 22]

On September 13, 2004, following remand, the trial court again denied petitioner's application for post-conviction relief.

---

[3] In support of this final claim petitioner argued, "Applicant received a copy of the trial transcript on March 7, 2001 and on March 11, 2001 applicant mailed his first request for the Audio Cassette Recording of Trial, for the trial transcript was incomplete." [doc. 1-4, p. 6] In the memorandum accompanying his application petitioner stated, "The fact that the trial transcript was incomplete, first came to the attention of the applicant on March 11, 2001 the applicant sent in his first request to the clerk of court for a copy of the Audio Cassette recording of the direct examination of the alleged victim by the assistant district attorney..." [doc. 1-4, p. 28] In addition to these claims, petitioner filed a pro se Motion for Production of Trial Documents and Records. In that pleading he alleged, "... items requested in this Motion are required to allow the movant to adequately present before this court evidence of the injustices perpetrated on the movant... that the trial transcript as transcribed omits portions of highly prejudicial testimony given by the alleged victim, while under direct examination by the assistant district attorney ... and un-objected to by the movant's own attorney, and allowed by the court ... in violation of the movant's attorney's Motion in Limine... [doc. 1-9, pp. 4-9]

4

[doc. 1-10, pp. 23-24][4]

On October 21, 2004 petitioner submitted a second writ application to the Third Circuit Court of Appeals. [doc. 1-11, pp. 1-31]

On February 15, 2005 the Third Circuit granted writs, in part, and denied writs, in part. The court noted,

> Relator alleges that there was prosecutorial misconduct when the prosecutor deliberately solicited impermissible other crimes evidence concerning a prior conviction in Tennessee and prior criminal accusations in Mississippi from the victim. Relator also argues that he was denied effective assistance of counsel because his attorney failed to make a timely objection thereto...
>
> Relator readily admits that this solicitation of information is not in the trial transcript; however, Relator alleges that the prosecutor's actions should be evident from the audio tapes of the victim's testimony. Relator does not present these cassettes fro this court's review, but he has demonstrated repeated attempts to obtain copies thereof...
>
> Relator's prior actions in seeking the records when combined with his current application were sufficient to merit an in camera review of the audio tapes by the trial court for a determination of whether Relator's allegations concerning the prosecutor's questioning are true.
>
> Relator has repeatedly complained that there was judicial misconduct in the trial court's previous

---

[4] With regard to the issue of the transcript and audio tapes, the court noted, "Defendant asserts that the Court is attempting to withhold information from him by not supplying him with an audio cassette tape of the direct examination of the victim. This issue has already been addressed by the Third Circuit; the Third circuit denied defendant's writ application on November 27, 2002. The Third Circuit did not find error in the trial court's ruling denying the motion for production of the audio tape of his trial... The Court has provided the defendant with a transcript of the July 20, 2001 show cause hearing regarding the above mentioned audio tape..." doc. 1-10, pp. 23-24]

5

refusals to provide him with copies of the audio tapes.
Therefore, in order to avoid any possible appearance of
impropriety, both the in camera inspection of the audio
tapes and the determination of the validity of
Relator's allegations concerning the recording should
be done by a judge other than the one who ruled on
Relator's application for post-conviction relief.

Accordingly, the portion of the trial court's ruling
that denied relief on Relator's ineffective assistance
of counsel claim for his attorney's failure to object
to the prosecutor's solicitation of prohibited other
crimes evidence is hereby reversed, vacated, and set
aside. The matter is remanded to the Ninth Judicial
District Court for the Chief Judge to appoint another
trial court judge to perform an in camera inspection of
the audio cassettes and to determine the veracity of
Relator's allegation. Once a finding has been made, the
lower court should then rule on the merits of this
ineffective assistance of counsel claim. In all other
respects, Relator's application is without merit and is
therefore denied. <u>State of Louisiana v. Phillip A.
Johnson</u>, No. KH 04-01447 (La. App. 3 cir. 2/15/2005)
(unpublished). [See doc. 1-12, pp. 1-2]

On February 25, 2005 petitioner filed a motion requesting

that he be allowed to be present for the court's in camera

inspection of the audio cassettes. [doc. 1-12, pp. 3-8]

On March 21, 2005, Judge Thomas M. Yeager, who had been

appointed by the Ninth Judicial District Court's Chief Judge to

conduct the in camera inspection, signed an order disposing of

the remaining claim concerning the audio tapes. Judge Yeager

noted,

On March 18, 2005, the Court listened to the direct,
cross, re-direct and re-cross testimony of the victim
... while following her testimony from the original
trial transcript (transcript pages 169-200), and
certifies that pages 169-200 of the trial transcript
are a true and correct recitation of the testimony of

6

the victim ... at the trial on August 24, 19999. [The
Court also learned from Gail Wilking [court reporter]
on that date that she had sent in December of 2004
copies of tapes Number 158 and 159 to Dana Houser, a
clerk/paralegal with the Third Circuit Court of
Appeal.]

On March 18, 2005, Gail Wilking informed the court that
these tapes have been stored in her office since the
trial and have not been edited, erased or altered in
any way. She informed the Court that it is impossible
to reverse and tape over any tape previously recorded
on with the machines provided by the Ninth Judicial
District Court.

Also, the Court has discussed this issue with the
prosecutor ... and the defense attorney ... and both of
them agree that there was no testimony (or even any
conversations off the record out of the presence of the
jury) of any other crimes evidence of a prior Tennessee
conviction or of an accusation of a crime while the
defendant lived in Mississippi.

Therefore, to answer the request of the Third Circuit
Court of Appeal on February 15, 2005, this Court finds
that the Defendant's allegations have no veracity and
his claim to ineffective assistance of counsel is
without basis in fact and law and without merit. [doc.
1-12, pp. 16-17]

Petitioner meanwhile sought review of the denial of his

request to be present for the in camera inspection. On June 20,

2005 the Third Circuit concluded that petitioner "... was not

entitled to be present when the district court listened to the

audio cassettes in its chambers. Accordingly, Relator's writ

application is denied. State of Louisiana v. Phillip A. Johnson,

KH 05-00579 (La. App. 3 Cir. 6/20/2005) (unpublished). [doc. 1-

12, p. 30]

On July 19, 2005 petitioner submitted a *pro se* writ

application to the Louisiana Supreme Court seeking review of the
Third Circuit judgments under Docket Numbers KH 04-01447 and KH
05-00579. [doc. 1-13, pp. 1-50]

On May 26, 2006 the Supreme Court denied his writ
application. State of Louisiana ex rel. Phillip Albert Johnson v.
State of Louisiana, 2005-2176 (La. 5/26/2006), 930 So.2d 9.

Petitioner signed his federal *habeas corpus* petition on May
25, 2007 [doc. 1-1, p. 11]; it was mailed on May 29, 2007 [doc.
1-1, p. 12], and, received and filed on May 30, 2007. Pursuant to
the "mailbox rule" (see fn. 1, supra), in the absence of any
evidence to the contrary, it will be assumed that petitioner
filed his federal petition on May 25, 2007.

### Law and Analysis

### 1. Limitations under 28 U.S.C. §2244(d)(1)(A)

This petition was filed after the effective date of the
Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).
Therefore, the court must apply the provisions of AEDPA,
including the timeliness provisions. Villegas v. Johnson, 184
F.3d 467, 468 (5th Cir. 8/9/1999); In Re Smith, 142 F.3d 832,
834, citing Lindh v. Murphy, 521 U.S. 320, 336, 117 S.Ct. 2059,
138 L.Ed.2d 481 (1997).

Title 28 U.S.C. §2244(d)(1)(A) was amended by AEDPA to
provide a one-year statute of limitations for the filing of
applications for writ of *habeas corpus* by persons such as

8

petitioner, who are in custody pursuant to the judgment of a State court. This limitation period runs from "...the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review..." 28 U.S.C. §2244(d)(1)(A).[5]

However, the statutory tolling provision of 28 U.S.C. §2244(d)(2) provides that the time during which a properly filed application for post-conviction relief was pending in state court is not counted toward the limitation period. Ott v. Johnson, 192 F.3d 510, 512 (5th Cir. 1999); Fields v. Johnson, 159 F.3d 914, 916 (5th Cir. 1998); 28 U.S.C. §2244(d)(2). Any lapse of time before the proper filing of an application for post-conviction relief in state court is counted against the one-year limitation period. Villegas, 184 F.3d 467, citing Flanagan v. Johnson, 154 F.3d 196, 197 (5th Cir.1998). Federal courts may raise the one-year time limitation sua sponte. Kiser v. Johnson, 163 F.3d 326 (5th Cir. 1999).

Thus, in order to determine whether a federal habeas corpus

---

[5] Nothing in the record before the court suggests that petitioner is relying on a constitutional right newly recognized by the United States Supreme Court and made retroactively applicable to cases on collateral review. Therefore, the statutory tolling provision of §2244(d)(1)(C) clearly does not apply.

Further, to the extent that petitioner implies that the factual predicate of his claims was only recently discovered, or that the State created impediments to his filing and that he is therefore entitled to the statutory tolling provisions of § 2244(d)(1)(B)and (D), such claims are more fully discussed in Section 2 below.

petition is timely under §2244(d)(1)(A), three dates must be known: (1) "...the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review..." [28 U.S.C. §2244(d)(1)(A)]; (2) "...[t]he time during which a properly filed application for State post-conviction... [remained] pending..."; and, (3) the date petitioner filed his federal *habeas corpus* petition.

### a. *Finality of Judgment*

Petitioner timely appealed his conviction and sentence. The Third Circuit affirmed his conviction on June 7, 2000 [See <u>State of Louisiana v. Phillip A. Johnson</u>, 2000-00042 (La. App. 3 Cir. 6/7/2000), 771 So.2d 325], and presumably sent notice of judgment to petitioner's retained counsel on that same date.[6]  In any event, petitioner was notified of this disposition on June 14, 2000 when his retained counsel mailed him a copy of the Third Circuit's opinion. [doc. 1-3, p. 15]

For AEDPA purposes, petitioner's judgment of conviction and sentence "became final by ... expiration of the time for seeking

---

[6] Uniform Rules, Courts of Appeal Rule 2-16.4 provides, "In every case, one copy of the published or unpublished opinion, when rendered, shall be delivered or mailed to the trial judge, the clerk of the trial court, all appeal counsel of record, and all parties not represented by counsel." Rule 2-17.1 provides, "Notice of judgment ... shall be delivered personally or mailed by the clerk to all counsel of record..." The Third Circuit's opinion was rendered on June 7, 2000. In the absence of any evidence to the contrary, the court is presumed to have followed its own rules and thus, the available evidence suggests that the court's opinion was mailed by the Clerk of the Third Circuit Court of Appeals to petitioner's appellate counsel on the day it was rendered.

[direct] review" [28 U.S.C. §2244(d)(1)(A)], at the earliest, thirty days following the date that notice of the Third Circuit's judgment was mailed to petitioner or, on or about July 14, 2000.[7] Under 28 U.S.C. § 2244(d)(1) petitioner had one year, or until July 14, 2001 to file his federal *habeas* petition.

Had petitioner's writ application in the Louisiana Supreme Court been timely, direct review under AEDPA would have concluded 90 days following the Louisiana Supreme Court's writ denial on May 31, 2002 [see State of Louisiana v. Phillip Johnson, 2001-1897 (La. 5/31/2002), 816 So.2d 866] or on or about September 1, 2002.[8] Under that scenario, petitioner would have had one year

---

[7] Louisiana Supreme Court Rule X, §5(a) provides, "An application seeking to review a judgment of the court of appeal ... shall be made within thirty days of the mailing of the notice of the original judgment of the court of appeal..." As noted, the Third Circuit is presumed to have followed the Uniform Rules and mailed Notice of Judgment to counsel on June 7, 2000. Nevertheless, petitioner should be afforded the benefit of every doubt; since the evidence he has provided establishes that his attorney mailed a copy of the judgment on June 14, 2000, that date will be adopted as the appropriate date of reckoning. Under Rule X, petitioner had 30 days from June 14, 2000 within which to file his writ application in the Louisiana Supreme Court. However, petitioner did not file his *pro se* writ application in the Louisiana Supreme Court until May 28, 2001, well beyond the limitations period provided by Rule X. Thus, petitioner's judgment of conviction became final by the conclusion of the time for seeking further direct review on July 14, 2000 when the 30 day period mandated by Rule X expired.

[8] In Roberts v. Cockrell, 319 F.3d 690, 694 (5th Cir. 2003), the Fifth Circuit noted, "The language of § 2244(d)(1)(A) provides that a decision becomes final 'by the conclusion of direct review or the expiration of the time for seeking such review.' [28 U.S.C. §2244(d)(1)(A)] We previously held that direct review includes a petition for writ of *certiorari* to the Supreme Court. See Giesberg v. Cockrell, 288 F.3d 268, 270 (5th Cir.2002)] Therefore, the 'conclusion of direct review' is when the Supreme Court either rejects the petition for certiorari or rules on its merits. If the conviction does not become final by the conclusion of direct review, it becomes final by "the expiration of the time for seeking such review.' We previously held that this includes the ninety days allowed for a petition to the Supreme Court following the entry of judgment by the state court of last resort. If the defendant stops the appeal process before that point, the conviction becomes final when the time for seeking further direct review in the state court expires."

11

from September 1, 2002, or until September 1, 2003, to file his federal *habeas* petition.

### b. Tolling of Limitations Period

Even under the more generous of the scenarios described above, petitioner cannot rely on the statutory tolling provision of §2244(d)(2). This is so because he did not file his first and only collateral attack in the state court until May 27, 2004 [doc. 1-4, pp. 2-30] and by that time, the one-year limitations period had already long expired even if the limitations period is reckoned from September 1, 2002.

Neither that filing, nor any of his subsequent filings in the Third Circuit Court of Appeals or the Louisiana Supreme Court (all of which were apparently timely under Louisiana law) could operate to toll the AEDPA limitations period since these proceedings were filed <u>after</u> the federal limitations period had already expired and, as stated above, the lapse of time <u>before</u> the proper filing of the application for post-conviction relief must be counted against the one-year limitation period. <u>Villegas</u>, 184 F.3d 467, citing <u>Flanagan v. Johnson</u>, 154 F.3d 196, 197 (5th Cir.1998).

Thus, a period of more than twelve un-tolled months elapsed between the date that petitioner's conviction became final under §2244(d)(1)(A) and the date that his federal suit was filed; accordingly, his *habeas* claims are barred by the timeliness

provisions codified at 28 U.S.C. § 2244(d).

## 2. *Finality of Judgment Under §2244(d)(1)(B) or (D)*

Petitioner may argue that he is entitled to reckon the commencement from the limitations period from some date other than the date that his judgment of conviction became final by the conclusion of direct review.

To the extent that petitioner implies that the continued refusal of the Louisiana courts to provide him with the audio recordings of the victim's trial testimony operated as an "...impediment to filing an application created by State action...", such claim is without support in fact or law. Petitioner has not (nor can he) show how the action in question operated as an impediment to filing his federal *habeas corpus* petition. See <u>Egerton v. Cockrell</u>, 334 F.3d 433 (5th Cir. 2003)(The failure to provide materials necessary to challenge a conviction may constitute an impediment created by the state.) Thus, he cannot rely on the statutory tolling provision of §2244(d)(1)(B) since he has not shown that he was denied the materials necessary to file his *habeas* petition.

Further, petitioner cannot rely on the provisions of §2244(d)(1)(D) under which federal courts may reckon the limitations period from "... the date on which the factual predicate of the claim ... could have been discovered through the exercise of due diligence..." By his own admission, petitioner

13

was aware of the alleged discrepancy in the transcript on either March 7, 2001 or March 11, 2001.[9] [See doc. 1-4, p. 6 and p. 28] Thus, even if the limitations period were reckoned from the later of these two dates, more than one un-tolled year lapsed before he filed his state application for post-conviction relief on May 27, 2004.[10]

### 3. Equitable Tolling

The Fifth Circuit has held that the AEDPA's one-year statute of limitations can, in rare and exceptional circumstances, be equitably tolled. See Davis v. Johnson, 158 F.3d 806, 811 (5th Cir.1998). However, "[e]quitable tolling applies principally where the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights." Coleman v. Johnson, 184 F.3d 398, 402 (5th Cir.1999) (quotation marks omitted). Nothing of record supports

---

[9] Of course, petitioner's underlying claim concerning alleged errors in the transcript, is patently without any basis in fact. Two judges of the Ninth Judicial District Court, the petitioner's retained trial and appeals counsel, the Assistant District Attorney, two panels of the Third Circuit Court of Appeals and the seven justices of the Louisiana Supreme Court have rejected his claim.

[10] Petitioner's Motions and letters requesting production of the audio tape cannot be considered "properly filed applications for State post-conviction or other collateral review ..." as defined by § 2244(d)(2) so as to toll the limitations period established by § 2244(d)(1). See Boyd v. Ward, 2001 WL 533221, *4 (E.D.La.2001); Brisbon v. Cain, 2000 Wl 45872, *2 (E.D.La.2000); Lookingbill v. Cockrell, 293 F.3d 256, 263 (5 Cir.2002) citing Williams v. Cain, 125 F.3d 269, 274 (5 Cir.1997) (motion for appointment of counsel does not toll the one-year limitation period); See also Myers v. Cain, 2001 WL 1218763, *4 (E.D.La., 2001); Soileau v. Cain, 2005 WL 1629945 (W.D.La. 2005) at *3, fn. 6.

the application of equitable tolling in this instance.  The petitioner was not actively misled by the defendant or anyone else.  Further, equitable tolling does not apply if the petitioner does not diligently seek habeas relief. Melancon v. Kaylo, 259 F.3d 401, 408 (5th Cir. 2001). In this instance, petitioner's otherwise timely state post-conviction proceedings terminated on May 26, 2006 when the Louisiana Supreme Court denied petitioner's writ application seeking review of the denial of his application for post-conviction relief. State of Louisiana ex rel. Phillip Albert Johnson v. State of Louisiana, 2005-2176 (La. 5/26/2006), 930 So.2d 9.  Nevertheless, petitioner waited almost a full year before filing the instant petition for habeas corpus relief. Petitioner was hardly diligent in seeking relief.

The petition is time-barred by the provisions of  28 U.S.C. § 2244(d)(1)(A).  Neither statutory nor equitable tolling applies. Dismissal is therefore recommended.

Accordingly,

**IT IS RECOMMENDED** that this petition for *habeas corpus* should be **DENIED AND DISMISSED WITH PREJUDICE**  because petitioner's claims are barred by the one-year limitation period codified at 28 U.S.C. §2244(d).

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation

15

to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within ten (10) days after being served with a copy of any objections or response to the District Judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See,* Douglass v. United Services Automobile Association, 79 F.3d 1415 (5th Cir. 1996).

**THUS DONE AND SIGNED** in Chambers at Alexandria, Louisiana, this _____ day of _____, 2007.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE

16